IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CORNELIA E. POPPINGER,**

    **Plaintiff,**

  vs.                                Civil Action 2:14-cv-492
                                        Judge Graham
                                        Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

REPORT AND RECOMMENDATION

**I.   Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income.  This matter is now before the Court on *Plaintiff, Cornelia E. Poppinger's, Statement of Errors* ("*Statement of Errors*"), Doc. No. 10, the Commissioner's *Memorandum in Opposition*, Doc. No. 16, and *Plaintiff's Reply*. Doc. No. 17.

Plaintiff Cornelia E. Poppinger filed her applications for benefits on January 24, 2011, alleging that she has been disabled since June 30, 2005.  *PAGEID* 298-312.  The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on October 24, 2012, at which plaintiff, represented by counsel, appeared and testified, as did Carl

Hartung, who testified as a vocational expert. *PAGEID* 81. In a decision dated January 11, 2013, the administrative law judge concluded that plaintiff was not disabled from June 30, 2005, the alleged disability onset date, through the date of the administrative decision. *PAGEID* 74-75. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 5, 2014. *PAGEID* 51-53.

Plaintiff was 47 years of age on the date of the administrative law judge's decision. *See PAGEID* 75, 298. She has at least a high school education, is able to communicate in English, and has past relevant work as a laundry worker and fast food worker. *PAGEID* 73. Plaintiff was last insured for disability insurance purposes on December 31, 2010. *PAGEID* 66. She has not engaged in substantial gainful activity since June 30, 2005, her alleged date of onset of disability. *Id*.

## II. Administrative Hearing

Plaintiff testified that she suffers from stress incontinence, which requires her to use a bathroom frequently and to make provision for leakage. *PAGEID* 93.[1] Medication for the condition has helped, but she must still use a bathroom approximately twelve times per day. *PAGEID* 94-96.

---

[1] Plaintiff asked to be excused during the administrative hearing to use the bathroom. *PAGEID* 90.

2

Plaintiff also complained of tingling, loss of sensation, and weakness in her right hand. PAGEID 91-92.  She takes ibuprofen for hand pain. She wears a splint on her hand two to three times per day for approximately 45 minutes to an hour at a time. Surgery has not been recommended because the problem is "not severe enough." *Id.* She has difficulty holding objects and writing, *id.*, although she can drive a car even with the splint. PAGEID 92-93.

Plaintiff testified that she suffers from sleep apnea, which causes daytime fatigue. PAGEID 96-97.  She uses a CPAP machine. PAGEID 97.

Plaintiff also complained of cramping in her back and shooting pain down her legs. PAGEID 97.  She can stand or walk for 20 to 30 minutes before experiencing shooting pain. *Id.*

On a typical day, plaintiff helps wash dishes and do laundry; she watches television, pays bills, and goes to doctor appointments and stores. PAGEID 98.  She goes grocery shopping with her husband twice per month, but she must lean on the cart and does not take items off the shelves. PAGEID 98-99.  Her husband loads and unloads the car, although plaintiff can put the groceries away. PAGEID 101.  Her husband does most of the cooking because he "just loves being in the kitchen." PAGEID 99.  She helps to mow the grass and can "probably do like three or four swipes" before having to rest.  *Id.*  Plaintiff also feeds, waters, and walks her dog. PAGEID 100.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually found by the administrative law judge. *PAGEID* 102-06. According to the vocational expert, such an individual could not perform plaintiff's past relevant work as a laundry worker and fast food worker, but could perform such jobs as file clerk, cashier, and machine operator. *PAGEID* 103-04.

### III. Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of a pain disorder, degenerative disc disease, degenerative joint disease, hypertension, a history of stress incontinence, obesity, obstructive sleep apnea, right wrist neuropathy, a depressive disorder, and a panic disorder without agoraphobia. *PAGEID* 66. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only stand and walk a total of four hours out of an eight-hour workday, cannot climb ladders, ropes, or scaffolds, frequently handle and finger objects with the right hand (her dominant extremity), frequently stoop, kneel, crouch, and crawl, and occasionally climb stairs and ramps. Mentally, she cannot have more than superficial contact with others and cannot work where there are strict production quotas.

*PAGEID* 66-68. Although the administrative law judge found that this RFC precludes the performance of plaintiff's past relevant work as a laundry worker and fast food worker, the administrative law judge

4

relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such representative jobs as file clerk, cashier, and office machine operator. *PAGEID* 72-74. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from June 30, 2005, through the date of the administrative decision. *PAGEID* 74-75.

**IV. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this

5

Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff challenges the administrative law judge's credibility determination. *Statement of Errors*, pp. 6-9. Plaintiff specifically argues that the administrative law judge failed "to provide specific rationale for rejecting Plaintiff's testimony." *Plaintiff's Reply*, p. 1. Plaintiff argues that the administrative law judge improperly concluded that plaintiff "only presented minimal evidence to support her urinary frequency" and "failed to provide objective evidence to support her claim allegations of incontinence." *Statement of Errors*, pp. 7-8. Plaintiff also argues that the administrative law judge improperly found that plaintiff's "non-compliance related to the use of the CPAP to treat her sleep apnea, and improvement in her pain from chiropractic treatment weighed against her credibility." *Id*. at p. 8.

A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). *See also* 42 U.S.C. § 423(d)(5)(A). In evaluating subjective complaints, it must be determined whether there

6

is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). If so, then the evaluator must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint. *Id.*; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

In evaluating a claimant's credibility, an administrative law judge should consider the objective medical evidence and the following factors:

>1. The individual's daily activities;
>
>2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
>3. Factors that precipitate and aggravate the symptoms;
>
>4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
>5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
>6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
>7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7, 1996 WL 374186 (July 2, 1996). The administrative law judge's credibility determination is accorded great weight and

7

deference because of the administrative law judge's unique opportunity to observe a witness's demeanor while testifying. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge dedicated almost four full pages to evaluating plaintiff's credibility, but nevertheless determined that plaintiff's subjective complaints are not entirely credible. *PAGEID* 69-72. Specifically, the administrative law judge articulated the proper standard for evaluating a claimant's credibility, summarized plaintiff's testimony, and concluded that "a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and symptoms and degree of functional limitations alleged by the claimant." *PAGEID* 70. The administrative law judge also found that the objective medical evidence does not support plaintiff's subjective complaints. *PAGEID* 70-72. The administrative law judge concluded his evaluation of plaintiff's credibility assessment as

follows:

> In addition to the general lack of objective evidence to support her subjective complaints, there are other considerations that weigh against the claimant's overall credibility. For example, there is significant evidence of non-compliance related to use of CPAP to treat her sleep apnea (*See* Exhibit B14F). Chiropractic treatment during February 2011 showed measurable improvement in her pain (Exhibit B18F). The claimant has no mental health treating source. Treatment for her conditions has been conservative and non-aggressive. No treating source opined that the claimant was disabled.
>
> The claimant's daily activities, as described above, are not restricted to the extent that she would be precluded from the range of work assessed herein. The performance of those activities, as reported, indicates that she has the ability to understand and carry out instructions, perform routine tasks, interact with others at least superficially, and maintain attention and concentration sufficient to perform those tasks.
>
> The record also contains inconsistent and exaggerated statements that further detract from the claimant's overall credibility. For example, the claimant's allegations of the frequency of restroom breaks is not supported by the medical evidence (*See, e.g.*, Exhibit B21F). Although the inconsistent/exaggerated information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless, such statements suggest that the information provided by the claimant generally may not be entirely credible.
>
> In summary, the location, duration, frequency, and intensity of the claimant's alleged symptoms, as well as precipitating and aggravating factors, are adequately addressed and accommodated in the above residual functional capacity. The objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain or other symptoms of such a severity or frequency as to preclude the range of work described above.

*PAGEID* 72.

The administrative law judge noted and followed the appropriate

standards, performed an appropriate evaluation of the evidence, and clearly articulated the bases of his credibility determination. Plaintiff disagrees with the administrative law judge's evaluation of plaintiff's complaints regarding the effects of her incontinence. However, the administrative law judge expressly considered plaintiff's testimony related to her incontinence, *see PAGEID* 70 ("She has stress incontinence and has to use the restroom about a dozen times per day, as well as use pads to help with accidents/leaking.  She takes medicine, which has helped to reduce, but not eliminate, the incontinence."), and found that plaintiff "failed to meet her burden of providing objective evidence to support her allegations of urinary urgency and frequency."  *PAGEID* 72 ("[T]he objective results at Exhibit B-21F tend to contradict the claimant's allegations, showing normal flow and a voiding efficiency of 95 percent.  The mere recitation of symptoms alone cannot serve as the basis for a finding of disability.").  This conclusion is supported by substantial evidence.  Notably, the medical evidence related to plaintiff's incontinence is sparse and does not support plaintiff's allegations of urgency and frequency.  A urodynamics test performed on August 23, 2010, showed normal pressure/flow and a bladder voiding efficiency greater than 95 percent.  *PAGEID* 566.  Plaintiff was prescribed Enablex on November 8, 2010, after she reported that her incontinence had worsened and that she was "leaking all of the time."  *PAGEID* 563.  Treatment notes from November 29, 2010, indicate that trhe condition

had improved. *Id*. The Enablex was "not working" by August 2011, so plaintiff was prescribed Ditropan XL. *PAGEID* 589. On September 19, 2011, plaintiff reported that she was "[d]oing better on Ditropan." *Id*.

Plaintiff also argues that the administrative law judge erred in failing to "mention or take into account" all of her testimony regarding her incontinence and that the administrative law judge "used his own lay opinion to interpret the medical evidence in this case in order to discredit the Plaintiff's testimony." *Statement of Errors*, pp. 7-8. Plaintiff's suggestion to the contrary notwithstanding, the administrative law judge is not required to expressly cite every piece of evidence, *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.") (citing *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507–08 (6th Cir. 2006)), and it was not improper for the administrative law judge to evaluate the objective medical evidence in evaluating plaintiff's credibility. *See* SSR 96-7, 1996 WL 374186 (July 2, 1996). Moreover, it is evident from the record that the administrative law judge considered plaintiff's testimony regarding her incontinence.

Plaintiff next argues that the administrative law judge erred in finding that chiropractic treatment from February 2011 showed measurable improvement in her pain because plaintiff consistently

11

reported "pain ratings of 8 and 9 out of 10 for the month of February 2011." *Statement of Errors*, p. 9.  Even though plaintiff reported a pain rating of nine on a 10-point scale in February 2011, plaintiff's chiropractor determined that plaintiff's condition was improving on February 16, 2011, and that plaintiff's "symptoms [were] showing measurable improvement" on February 18, 2011.  *PAGEID* 537-38.  It was not error for the administrative law judge to credit these assessments.

Finally, plaintiff argues that the administrative law judge erred in his credibility determination by improperly noting that noncompliance related to plaintiff's use of a CPAP weighed against plaintiff's credibility.  *Statement of Errors*, p. 8.  The Commissioner seems to concede that the administrative law judge erred in finding that plaintiff was noncompliant in the use of her CPAP.  *Commissioner's Response*, p. 7.  The Commissioner argues, however, that any error in this regard was harmless considering the remainder the administrative law judge's credibility evaluation and the deferential standard of review.  *Id*.  This Court agrees.  The administrative law judge articulated and applied the proper standards and, with the exception of finding plaintiff was noncompliant with the use of her CPAP, performed a thorough evaluation of plaintiff's credibility.  Considering all the foregoing, the Court finds that the administrative law judge's error does not negate the validity of the ultimate credibility determination, which is supported by substantial evidence.

*See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

Plaintiff next argues that the administrative law judge erred in his RFC determination by failing to consider the effect of plaintiff's stress incontinence on her ability to work. *Statement of Errors* pp. 4-6. Plaintiff's argument is not well taken.

The RFC determination is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); 416.927(d)(2), (3); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004). It represents the most, not the least, that a claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a); 416.945(a); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). In assessing a claimant's RFC, an administrative law judge must consider all relevant evidence, including medical source opinions, relating to the severity of a claimant's impairments. *See* 20 C.F.R. §§ 404.1527(d), 404.1545(a); 416.927(d), 416.1545.(a). Furthermore, courts have stressed the importance of medical opinions in determining a claimant's RFC, and have cautioned administrative law judges against relying on their own expertise in drawing conclusions from raw medical data. *See Isaacs v. Astrue*, No. 1:08-CV-828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (quoting *Deskin v. Comm'r Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)).

As discussed *supra*, the administrative law judge expressly considered the medical evidence and plaintiff's testimony regarding plaintiff's incontinence and concluded that plaintiff had "failed to

13

meet her burden of proving objective evidence to support her allegations of urinary urgency and frequency." *PAGEID* 72. That decision is supported by substantial evidence.  An urodynamics test performed on August 23, 2010, showed normal pressure/flow and a bladder voiding efficiency greater than 95 percent, *PAGEID* 566, and treatment notes suggest that plaintiff responded well to medication. *See PAGEID* 563, 589.  Plaintiff has pointed to no evidence in the record – aside from her own testimony that the administrative law judge reasonably found not fully credible – to support any work related limitation arising from her incontinence.  Plaintiff suggests that receiving treatment by a urologist implies that she has work limitations related to her incontinence, *see Plaintiff's Reply*, p. 3, but the mere fact that urinary incontinence was diagnosed says little about whether the condition results in work-related limitations.  *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) ("But not every diagnosable impairment is necessarily disabling."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.") (citing *Foster v. Brown*, 853 F.2d 483, 489 (6th Cir. 1988)).  Moreover, "'there is no legal requirement for a specific limitation to be included in [an RFC determination] in order to represent every 'severe' impairment.'"  *See Shearman v. Comm'r of Soc. Sec.*, No. 1:12-cv-760, 2013 WL 6578770, *3 (S.D. Ohio Dec. 16, 2013) (quoting *Cash v. Comm'r of Soc. Sec.*, No. 3:13-cv-73, 2014 WL 4211027,

14

at *5 (S.D. Ohio Aug. 26, 2014)).  *See also Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).  Plaintiff's argument that the administrative law judge failed to consider the effect of incontinence in his RFC determinaion is therefore without merit.

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of*

*Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


January 28, 2015                                    *s/Norah McCann King*
                                                      Norah McCann King
                                              United States Magistrate Judge